IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NANCY WAMBUI KIMANI,<br>    *Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    *Defendant* | No. 23-cv-1017-ABA |

**MEMORANDUM OPINION**

Plaintiff Nancy Kimani filed this action challenging the decision of the Social Security Administration ("SSA" or "Commissioner") to deny her claims for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income Benefits. Compl., ECF No. 1. The parties have consented to proceed before a magistrate judge. *See* ECF No. 6; 28 U.S.C. § 636; Loc. R. 301. The Court has considered the record in this case, ECF No. 9, and the parties' briefs, ECF Nos. 12, 14, and 15, and finds that no hearing is necessary. Loc. R. 105.6. This Court must uphold the SSA's final decision if it is supported by substantial evidence and the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, and for the reasons below, the Court denies Plaintiff's motion for summary judgment and affirms the Commissioner's decision.

I.    **PROCEDURAL BACKGROUND**

Plaintiff protectively filed applications under Titles II and XVI of the Social Security Act, for Disability Insurance Benefits and Supplemental Security Income Benefits, on April 16, 2019, alleging that she became disabled within the meaning of the Social Security Act as of April 9, 2019, due to high blood pressure, cholesterol, asthma, bronchitis, shortness of breath, acid reflux,

macular degeneration, and arthritis. Transcript of the Administrative Record, ECF No. 9 ("Tr.") at 12, 51, 58, 169-178, 179-184. The SSA denied Plaintiff's claim initially and on reconsideration. Tr. 50-91. On March 22, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 28-49. On July 6, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any relevant time, either as of the alleged onset date or at any point thereafter. Tr. 12-22. The Appeals Council denied Plaintiff's request for review. Tr. 1-6. Thus, the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); 20 C.F.R. § 422.210(a). Plaintiff filed this action on April 17, 2023, ECF No. 1, and filed the pending motion for summary judgment on September 13, 2023. ECF No. 12 ("Mot."). Thereafter, the Commissioner filed a response, ECF No. 14 ("Resp."), and Plaintiff filed a reply, ECF No. 15 ("Reply").

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a) & 416.905(a). The ALJ is required to evaluate whether a claimant is disabled using a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

> Under this process, an ALJ evaluates, in sequence, whether the claimant: "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of [an impairment listed in 20 C.F.R. Part 404, Subpart

2

> P, Appendix 1]; (4) could return to her past relevant work; and (5)
> if not, could perform any other work in the national economy."

*Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ here determined that Plaintiff "ha[d] not engaged in substantial gainful activity since April 9, 2019." Tr. 15.

Step two looks to whether an impairment is "severe," meaning whether the impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) & 416.920(c). Here, the ALJ found that Plaintiff suffered from "the following severe impairments: asthma; obesity; osteoarthritis (OA) in her bilateral knees; bursitis and OA of her bilateral shoulders; hypertension; probable: venous chronic insufficiency with leg swelling; chronic lymphedema; sleep apnea; and Gastroesophageal reflux disease (GERD)." Tr. 15. The ALJ found that other impairments that Plaintiff complained of, or that were reflected in her medical records, were not severe within the meaning of §§ 404.1520(c) and 416.920(c), including "residual effects from her left eye cataract surgery, hyperlipidemia, and right rotator cuff tendinitis." *Id.*

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. 16.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), which she used at steps four and five. Tr. 17; 20 C.F.R. §§ 404.1520(e) & 416.920(e). The concept of residual functional capacity assesses "the most the claimant can still do despite [claimant's] physical and mental limitations that affect [claimant's] ability to work." *Lewis v. Berryhill*, 858 F.3d 858, 861-

62 (4th Cir. 2017) (cleaned up, quoting 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1)). Here, the ALJ determined that Plaintiff retained sufficient RFC to

> perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except occasionally: stoop, crouch, climb ramps and stairs; Never: climb ropes, ladders and scaffolds, kneel, nor crawl; Occasionally: reach overhead with right upper extremity (RUE); Never push/pull with the RUE; No exposure to: unprotected heights, moving machinery, open flames and open bodies of water; and No exposure to: fumes, dust, gas, pulmonary irritants.

Tr. 17. In this context, "occasionally" means "occurring from very little up to one-third of the time" S.S.R. 83-10.

At step four, the ALJ determined that Plaintiff could perform past relevant work "as a Sorter (DOT 789.687-034, light exertion, SVP 2)." Tr. 21. Having found that Plaintiff could perform her previous job, the ALJ concluded that Plaintiff was not disabled, and did not proceed to step five. Tr. 22.

## III.   LEGAL STANDARD

A claimant seeking benefits under the Social Security Act "bears the burden of proving that he is disabled within the meaning of the [Act]." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). A disability determination must be affirmed if the ALJ applied the correct legal standards and the ALJ's factual findings are supported by substantial evidence. *Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* at 260 (quoting *Craig*, 76 F.3d at 589). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. And, even if a court would have

decided the case differently, it must affirm an ALJ's decision when supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

IV.     **ANALYSIS**

Plaintiff alleges that the ALJ committed two errors that should result in a remand for additional consideration. First, Plaintiff alleges that, because there are no medical opinions in the record that expressly addressed her functional limitations, the ALJ's RFC assessment is not supported by substantial evidence and the ALJ legally erred by failing to adequately develop the record. Second, Plaintiff alleges that the ALJ failed to properly evaluate whether Plaintiff had shown that she needed to use a cane and, if such medical necessity was shown, the impact of such alleged need on her RFC and her ability to, for example, return to her prior work as a sorter. For the reasons provided below, the Court concludes that the ALJ's RFC assessment is supported by substantial evidence and is legally sufficient, and the ALJ did not legally err with respect to Plaintiff's cane use.

   A.     **The ALJ's RFC Assessment Is Supported by Substantial Evidence and Is Legally Sufficient**

The medical record in this case is limited and there are no medical opinions on Plaintiff's functional capacity. The non-examining State Agency medical consultant, L. Robbins, M.D., from Maryland Disability Determination Services, concluded on initial review that Plaintiff's loss of central visual acuity was a medically determinable impairment, but that there was "insufficient evidence to evaluate the claim." Tr. 55 & 62. Karen Sarpolis, M.D. confirmed these findings on reconsideration. Tr. 75-76, 86-87. During the hearing before the ALJ, the ALJ suggested that Plaintiff obtain a medical opinion from a treating source and referred Plaintiff for a consultative exam. Tr. 32-33, 48. On April 28, 2022, Perfecto Valarao, M.D. performed the consultative exam on Plaintiff, but Plaintiff did not consult a treating source for a medical

5

opinion. Tr. 624-630. Dr. Valarao examined Plaintiff, reviewed her medical history, and rendered findings with regard to Plaintiff's medical condition, including range of motion, gait, and various other physical abilities and limitations. *Id.* Dr. Valarao did not, however, render an opinion on Plaintiff's RFC.

Plaintiff argues that without a medical opinion "regarding the impact that Plaintiff's impairments would have on her ability to function in a sustained work environment," the ALJ's assessment was not supported by substantial evidence and that the ALJ legally erred by failing to adequately develop the record. Mot. at 9-10. Plaintiff contends that the ALJ should have recontacted Dr. Valarao and requested "a source statement speaking directly to Plaintiff's functional limitations based upon his examination findings." *Id.* at 11-12. Plaintiff correctly asserts that, "although it is not [] within the purview of an ALJ to help a claimant accumulate favorable evidence in an advocative capacity," an ALJ "has a duty to investigate the facts and develop the record." *Id.* at 8 (quoting *Oakes v. Kijakazi*, 70 F.4th 207, 213-14 (4th Cir. 2023)). But it does not follow that an RFC finding, to be supported by substantial evidence, must be supported by a medical opinion expressly addressing a person's functional capacity, or that the ALJ otherwise was legally required to revert to Dr. Valarao for further findings with regard to Plaintiff's RFC. Indeed, in her reply brief, Plaintiff concedes that an RFC "is for the ALJ to assess." Reply at 2.

It is the duty of the ALJ to make the RFC assessment, and the ALJ is not required to obtain a medical opinion thereon. *Felton-Miller v. Astrue*, 459 F. App'x 226, 230-31 (4th Cir. 2011) (holding that an RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record," and an ALJ is "not required to obtain an expert medical opinion as to [a claimant's] RFC") (citing 20 C.F.R. §§ 404.1546(c) & S.S.R. 96-8p);

6

*Koonce v. Apfel*, 166 F.3d 1209 (4th Cir. 1999) (table) ("The determination of a claimant's RFC and the application of vocational factors are reserved to the ALJ, who is not bound by medical opinion on these subjects."); *Roshelle S. B. v. Kijakazi*, No. 21-cv-2842-BAH, 2022 WL 4448924, at *3 (D. Md. Sept. 23, 2022) (providing that "it is also clear that the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner") (quoting *Jones v. Saul*, No. 20-cv-00437, 2021 WL 1015821, at *14 (S.D.W. Va. Feb. 23, 2021)); *Beach v. Comm'r, Soc. Sec. Admin.*, 17-cv-3130-BPG, 2018 WL 6344201, at *3 (D. Md. Aug. 29, 2018) ("[T]he ALJ is not required to have a physician's opinion to render an RFC decision because the final authority to render an RFC and assess disability lies with the ALJ."); 20 C.F.R. §§ 404.1546(c), 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity.").

Instead, the ALJ must review the record as a whole and make findings supported by that record. 20 C.F.R. §§ 404.1520b, 416.920b ("After we review all of the evidence relevant to your claim, we make findings about what the evidence shows."); *Nuton v. Astrue*, 08-cv-1292-SKG, 2010 WL 1375297, at *4 (D. Md. Mar. 30, 2010) ("[I]t is the ALJ's duty to analyze and synthesize the medical record as a whole . . ."). The district court on review must then determine "whether the record contained sufficient medical evidence for the ALJ to make an informed decision" regarding the claimant's impairments. *Craft v. Apfel*, 164 F.3d 624 (4th Cir. 1998) (table) (quoting *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989)); *see Britt*, 860 F. App'x at 262 ("Meaningful review [of an RFC] is frustrated—and remand necessary—only where 'we are unable to fathom the [ ] rationale in relation to evidence in the record.'") (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

The Court concludes that the ALJ's RFC assessment was supported by substantial evidence and the ALJ did not legally err by failing to obtain a medical opinion on the RFC question. The ALJ did what the law required in the face of an underdeveloped record: she ordered a consultative exam and suggested Plaintiff get a medical opinion from a treating doctor. *See* 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."); *Huddleston v. Astrue*, 826 F. Supp. 2d 942, 959 (S.D.W. Va. 2011) ("[I]f the information needed to make a determination is not readily available from treating source records, and a clarification cannot be obtained, the ALJ is obligated to obtain a consultative examination.").

The ALJ also adequately explained her conclusion, including why the record supported her findings. For example, the ALJ discussed Plaintiff's testimony, including that Plaintiff "admitted that she stopped working because she was not able to renew her CNA/GNA license" and "reported that she has a cane to ambulate, her grandchildren help her a lot; she cannot lift more than a gallon of milk; she cannot stand much; [] she only walks in the backyard alone" and "only drives short distances due to the pain in her legs." Tr. 18.

The ALJ also considered the medical record, including the following. In July 2019, the ALJ explained, Plaintiff's "hypertension, hyperlipidemia, GERD, and arthritis were listed as chronic conditions, but stable or controlled" and "[h]er pulmonary function test was normal." *Id.* (citing Tr. 591, 594-96). In September 2019, treatment notes reflected that Plaintiff's "GERD symptoms occurred rarely, and her condition was stable," Tr. 19 (citing Tr. 584-85), and that an "MRI of her brain showed progressive white matter signal abnormalities likely from progressive chronic microvascular ischemic events correlated with a history of hypertension, hyperlipidemia,

8

or other conditions" and "a confluent area of increased signal in the frontal parietal white matter posteriorly on the right, which was unchanged from her previous study in 2005." *Id.* (citing Tr. 573-74). In December 2019, Plaintiff "complained of shortness of breath, wheezing, and pain in her left shoulder" and "was referred to physical therapy for her shoulder and given albuterol for asthma with an acute exacerbation." *Id.* (citing Tr. 559, 562). In January 2020, Plaintiff "underwent a subacromial injection in the left shoulder," "still had not started physical therapy," and was "feeling better with the Flovent for asthma treatment." *Id.* (citing Tr. 553, 555). In February 2020, "[i]maging of her shoulder showed . . . acromioclavicular (AC) joint arthritis, and signs of degeneration" and that Plaintiff "stated that physical therapy was helping with the pain." *Id.* (citing Tr. 537, 547-48). In August 2020, Plaintiff reported knee and shoulder pain but "declined both physical therapy and orthopedic referrals." *Id.* (citing Tr. 509-12). In August 2021, Plaintiff became dizzy and fell. *Id.* (citing Tr. 460). In October 2021, "[i]maging showed only mild AC joint arthrosis" and Plaintiff "was given a cortisone injection." *Id.* (citing Tr. 614-19). In October 2021, Plaintiff underwent a vison assessment with Joshua Steiner, M.D., which indicated Plaintiff's "best correct visual acuity in the right eye was 20/40 and in the left eye was 20/25" and that Plaintiff could "constantly perform work activities that involved Vision [and] had no exertional or postural limitations related to vision." *Id.* at 20-21 (citing Tr. 621-23). Finally, the ALJ considered the effects of Plaintiff's obesity on her RFC in accordance with SSR 19-2p. Tr. 20.

The ALJ also relied on the results of Dr. Valarao's April 2022 consultative exam, including Dr. Valarao's findings of "mild crepitus in the claimant's knees on flexion extension maneuvers" and "signs of chronic lymphedema," that Plaintiff "ambulated slowly and limped,"

9

and had "limited straight leg raising, normal other ranges of motion, and no sensory deficits." *Id.* (citing Tr. 625-30).

The ALJ's discussion of the evidence, including the consultative exam, shows that her RFC determination is supported by substantial evidence in that it consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Britt*, 860 F. App'x at 259, and the Court is able "to fathom the [ALJ's] rationale in relation to evidence in the record," *id.* at 262 (cleaned up).

Plaintiff relies heavily on *Shecona W. v. Kijakazi* as being analogous to this case, but *Shecona W.* is readily distinguishable. In that case, after the hearing with the ALJ, the ALJ received additional limited and unclear mental health evidence indicating the plaintiff's "poor" concentration, insight, and judgment, but failed to follow up on it by recontacting the source or obtaining a consultative exam. No. 21-cv-0819-SAG, 2022 WL 2805632, at *2 (D. Md. July 18, 2022). The ALJ in *Shecona W.* also failed to refer to the new evidence in the decision and relied only on pre-hearing evidence. *Id.* The district court in *Shecona W.* held that it had no way of knowing whether the supplemental records would have changed the ALJ's decision, and concluded that additional evidence could reasonably have led to a different decision, and thus the ALJ's failure to follow up on the mental health evidence prejudiced the plaintiff. *Id.* at *2-3. The issue in *Shecona W.* was the ALJ's failure to obtain a consultative examination after receiving additional unclear evidence. Here, the ALJ properly ordered a consultative exam. *Cf. id.* at *3 ("Because of the Commissioner's duty to develop the medical record fully and fairly, 'it is reversible error for an ALJ not to order a consultative examination when such evaluation is necessary for [the ALJ] to make an informed decision.'") (quoting *Huddleston*, 826 F. Supp. 2d at 959).

Nonetheless, Plaintiff argues that by failing to recontact Dr. Valarao and asking him specifically to make findings as to Plaintiff's residual functional capacity, the ALJ failed "to 'make every reasonable effort to obtain a medical source statement' *regarding [a claimant's] limitations* and develop the record." Mot. at 11 (quoting *Shecona W.*, 2022 WL 2805632, at *3). Plaintiff argues that the ALJ "lament[ed]" the lack of a medical opinion in the consultative examination and that "the further development the ALJ recognized as necessary in order to ensure a sufficient record on which to evaluate Plaintiff's disability claim was not accomplished through the doctor's report." Reply at 3. But the ALJ did not express any such "lament"; what the ALJ stated was this:

> While the consultative examination report does not include a medical opinion, the findings therein are partially consistent with the evidence of record. I find that the exam findings support the claimant's continued limitation to light work, the need for limits on postural activities, and the need for safety precautions, including preclusion from certain climbing and hazards.

Tr. 20. As explained above, the ALJ in this case followed the law by ordering a consultative exam, and the fact that it did not contain an opinion on Plaintiff's functional capacity does not render the ALJ's decision unsupported by substantial evidence, particularly given that an ALJ is not required to rely on medical opinion evidence in connection with an RFC. The ALJ did not legally err, and adequately developed the record.

Finally, Plaintiff argues that the ALJ failed to describe which evidence she relied upon to establish the RFC. Mot. at 12. Plaintiff contends that "[n]o limitations are linked to specific impairments or symptoms, adding to the unclear nature of the decision as a whole." *Id.*; *see* SSR 96-8P ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence."); *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("The ALJ must *both* identify

11

evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'") (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

The Court disagrees. After the ALJ announced Plaintiff's RFC, the ALJ did specifically explain which medical findings supported the specified limitations. *See* Tr. 19 ("MRI findings support the claimant's need for reduction in exertion and safety precautions, including preclusion from certain climbing and hazards," "[t]he noted findings [including results from shoulder imaging and medication usage] support the claimant's continued need for a reduction in exertion, postural limitations, and need for environmental limitations to address her asthma," and "[t]he described evidence [including Plaintiff's complaints of dizziness, falling, and shoulder pain, and imaging showing mild shoulder joint osteoarthritis] further supports the claimant's need for safety precautions, postural limitations, and the claimant's need for manipulative limitations in the right upper extremity"), Tr. 20 (the consultative exam findings "support the claimant's continued limitation to light work, the need for limits on postural activities, and the need for safety precautions, including preclusion from certain climbing and hazards"). The Court concludes that the ALJ adequately analyzed and explained the basis for her RFC assessment, including identifying the medical evidence that supported the components of that assessment.

      **B.**      **The ALJ Also Appropriately Addressed Plaintiff's Use of a Cane**

Plaintiff also argues that the ALJ legally erred by failing to evaluate her need for a cane. To find that a cane is "medically required," the applicable regulations provide that "there must be *medical documentation* establishing the need for a hand-held assistive device [*e.g.*, a cane] to aid in walking or standing, and *describing the circumstances for which it is needed*." SSR 96-9p (emphases added). As Judge Gallagher has explained, SSR 96-9P "does not impose a requirement that the ALJ make an express finding of medical necessity in all cases in which a

claimant uses a cane." *Morgan v. Comm'r, Soc. Sec.*, No. 13-cv-2088-JKB, 2014 WL 1764922 at *1 (D. Md. Apr. 30, 2014). "Instead, SSR 96-9P provides guidance regarding the required showing for an ALJ to reach the conclusion that a claimant's hand-held device is 'medically required' where an individual is capable of less than a full range of sedentary work." *Id.*

Here, the ALJ acknowledged that Plaintiff "reported that she has a cane to ambulate," Tr. 18, and Plaintiff testified that she has balance issues and sometimes falls and has trouble walking. Tr. 34, 38, 39. During the consultative exam, Dr. Valarao noted that Plaintiff "[a]mbulates with slowly paced steps, limps, uses a walker," but concluded that "[w]ithout the walker, she is able to walk ok with some limping." Tr. 629. Plaintiff was never prescribed a cane and no doctor opined that she needed one. Otherwise, Plaintiff's medical records indicate that Plaintiff had a normal gait. Tr. 463, 484, 650.

It is unclear, and the Court does not decide, whether this evidence constitutes "medical documentation establishing the need for a hand-held assistive device" as required by SSR 96-9P. It is consistent with, or if anything short of, the type of evidence that other judges of this Court have found do not established medical necessity. *See Morgan*, 2014 WL 1764922 at *1 (explaining that "SSR 96-9P does not impose a requirement that the ALJ make an express finding of medical necessity in all cases in which a claimant uses a cane" and that such a finding was not required because there was no medical documentation establishing the need for a cane or describing the circumstances for which it was needed, even though Plaintiff's treating doctor stated he "needs a cane to stand"); *Anang v. Colvin*, No. 12-cv-3431-JKS, 2014 WL 576296, at *3 (D. Md. Feb. 11, 2014) ("[N]either the consultative examiner nor the therapist describes the circumstances under which Anang needs a cane, her own reports indicate that the need is

13

occasional at best, and only one of her lower extremities is impaired. Thus, there was insufficient evidence that a hand-held assistive device was medically required.").

But what is clear is that even if the record established that Plaintiff's cane is medically necessary, there is no "medical documentation" that "describe[es] the circumstances for which [a cane] is needed," which SSR 96-9P independently requires. Without such evidence, there was no need for the ALJ to evaluate whether a cane was medically necessary, or whether such a need (if any) rendered her unable to, for example, perform her previous work as a sorter.

Plaintiff cites *James v. Colvin* for the proposition that "Courts have found that a[n] RFC formulated by an ALJ who failed to take into account a claimant's cane use lacks the support of substantial evidence." No. 13-cv-547-JRS, 2014 WL 4630598, at *17 (E.D. Va. Sept. 11, 2014). However, in *James*, when the ALJ "determined that Plaintiff did not need a cane while performing light work," "the ALJ stated that certain medical records did not reference Plaintiff's use of a cane" when, in fact, the records did. *Id.* at *16, *17. The court in *James* concluded that "[b]ecause the ALJ's RFC assessment was based in part upon incorrect facts, the Court [could] not find that substantial evidence support[ed] the ALJ's RFC assessment." *Id.* at *17. No such error in interpreting the medical evidence exists in this case. Given the lack of medical documentation that establishes the need for a cane and the circumstances for which it is needed, the Court concludes that the ALJ did not legally err by failing to specifically evaluate why Plaintiff did not need a cane.

## V.     CONCLUSION

For these reasons, the final decision of the SSA is affirmed pursuant to sentence four of 42 U.S.C. § 405(g) and Plaintiff's request for a remand is denied.

An appropriate order follows.

Date:   April 18, 2024                                     _____/s/_____
                                                           Adam B. Abelson
                                                           United States Magistrate Judge